IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT EDWARDS,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | **NO. 07-3987** |
| | : | |
| **HARLEYSVILLE NATIONAL BANK,** | : | |
| Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                   **October 14, 2008**

This is a Family Medical Leave Act (FMLA)[1] case. The plaintiff, Robert Edwards, was a bank manager at Harleysville National Bank (HNB). He had requested medical leave for knee surgery but was terminated before the scheduled operation date. Edwards claims that this termination interfered with the exercise of his FMLA rights, in violation of 29 U.S.C.A. § 2615(a) (West 2008).[2]

HNB has moved for summary judgment. After considering the parties' memoranda, I will grant the motion because (1) Edwards was not eligible to exercise FMLA leave rights, and (2) he has failed to raise a genuine issue as to the legitimacy of HNB's termination decision.

---

[1] Congress enacted the FMLA in 1993 to accommodate the important societal interest in assisting families by establishing a minimum labor standard for leave. Congress' stated purposes for the act are (1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity; and (2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and fore the care of a child, spouse, or parent who has a serious health condition. Sommer v. Vanguard Group, 461 F.3d 397, 398–99 (3d Cir. 2006) (citations, quotations, internal alterations omitted).

[2] The statute provides, in pertinent part, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." § 2615(a)(1).

**I. Background**

Edwards was initially hired by Citizens National Bank (CNB) on October 5, 1998. His primary job was originating loans. At this time, HNB and CNB were separate subsidiaries of Harleysville National Corporation (HNC). On or around March 24, 2004, CNB was merged into HNB. On or about April 10, 2004, Edwards was promoted to Branch Manager for HNB's Slatington branch (Branch), a position he held until he was terminated. There is disagreement as to what responsibilities Edwards had, if any, over branch operations[3]: Edwards believes he had no direct responsibility for branch operations; HNB believes that Edwards, as the manager, had at least supervisory responsibilities.

Edwards reported directly to Walter Roettig, Regional Branch Administration Manager. Roettig reported to Louis Spinelli, Executive Vice President for Branch Administration. Spinelli reported to Demetra Takes, HNB's President and CEO. As of 2007, John Nee was the Assistant Branch Manager and reported directly to Edwards.[4] Donna Wisneski was the Head Teller and reported directly to Nee. Nancy Conner was the Assistant Head Teller.

On or about March 21, 2007, Edwards informed Spinelli that he intended to undergo bilateral knee replacement surgery. Two preparatory procedures were to be

---

[3] This term covers a number of day-to-day procedures; the most pertinent for the purposes of this case are monthly audits and cash controls. (See Pl.'s Dep. 138:24–140:5, May 30, 2008.)

[4] Terry Moyer was Nee's predecessor, and worked as the Assistant Branch Manager through at least 2005 and 2006.

performed in March and May, and the replacement surgery itself was scheduled for later that fall. By at least May 2007, Roettig and Takes were also informed of the pending operations.

On June 21, 2007, Laurallee Frederick, a member of HNB's Risk Management Department, came to the Branch to conduct an audit. Before the audit was to begin, however, Wisneski informed Frederick that she had embezzled about $570,000 from the Branch over the course of the past six or seven years; she was terminated that day. An internal investigation was conducted. It was found that the required monthly audits of the vault and Wisneski's drawer had not been performed for several years; the branch officers with direct responsibility, Conner and Nee, had been reporting that the audits were being completed regularly. Moyer, Nee's predecessor, had also failed to perform the monthly audits. No other personnel were found to have knowingly participated in the embezzlement.

In connection with the investigation, Edwards was interviewed on June 25, and he provided a signed statement stating that he had no responsibility for branch operations (i.e. the failure to audit or the submission of false reports that audits had been conducted). At the end of the interview, Edwards was told that he would be suspended without pay pending further investigation.

That same day, Spinelli was informed that the monthly audits had not been performed, that false reports had been submitted, and that Edwards disclaimed any

responsibility for those operations.  Spinelli met with Takes the next day or so and recommended that Edwards be terminated; Takes agreed.  On June 27, less than one week after the embezzlement was discovered, Edwards met with Spinelli, Roettig, and Human Resources Director, Liz Graham, and was informed that "based on the situation at hand they had to terminate his employment."  (Pl.'s Dep. 112:9–15.)

Edwards filed the current complaint on September 24, 2007, alleging that he was terminated in violation of the FMLA, the Employment Retirement Income Security Act (ERISA), and Pennsylvania's Wage Payment and Collection Law (Pa. WPCL).  HNB filed the pending motion for summary judgment on June 23, 2008, and Edwards timely responded.[5]

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is

---

[5] In his memorandum opposing HNB's motion, Edwards indicated that he wished to have the ERISA and Pa. WPCL claims dismissed.  (Pl.'s Opp. Mem. at 1 n.1.)  He also stated he would only be pursuing an FMLA interference claim and not a retaliation claim.  (Id.)  Accordingly, this memo focuses only on the FMLA interference claim.

"material" when it could affect the outcome of the case under the governing law.  Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case."  Celotex, 477 U.S. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must view the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Anderson, 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has produced more than a "mere scintilla of evidence"

demonstrating a genuine issue of material fact, then the court may not credit the moving party's version of events against the opponent, even if the quantity of the moving party's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Discussion

I will grant the motion for summary judgment because Edwards has failed to establish the *prima facie* case for an interference claim under the FMLA. To state a claim for interference, the plaintiff "only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Sommer v. Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006) (quoting Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005)). "[T]he employee need not show he was treated differently than others. Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Callison, 430 F.3d at 119–20. "[A] *McDonnell-Douglas* burden-shifting analysis is not required." Sommer, 461 F.3d at 399.

#### A. Edwards did not have FMLA rights to exercise

First, Edwards does not fall within the protection of the FMLA. There is no disagreement that Edwards would have been eligible to seek leave for the surgery, but HNB argues that the claim should be dismissed because the termination decision was for a non-FMLA reason. Its reading of section 2615(a)(1) would bar only the *illegitimate*

interference of an employee's FMLA's rights, the illegitimacy being determined by whether the exercise of FMLA rights was a factor in the termination decision. Because the decision to terminate Edwards was only made in light of the embezzlement issue, HNB contends Edwards has not stated a valid interference claim, and that it bears no liability.

Edwards counters that he has met all the requirements under the law. He was an "eligible employee" seeking leave for a "serious health condition," as the terms are defined by regulation. See 29 C.F.R. §§ 825.114(a)(1), (a)(2)(i) (2008). He provided proper notice to his superiors. Because he was qualified for FMLA leave and the termination deprived him of that statutory leave, Edwards contends HNB interfered with his FMLA rights. He also argues that "[o]nce the Plaintiff has made out his *prima facie* case, the burden of proof is on the employer to demonstrate that it would have taken the same action absent the leave request." (Pl.'s Opp'n Mem. at 17.) As a result, the onus is on HNB to establish the legitimacy of its actions.

Edwards' claim fails because he had no FMLA rights to exercise. The plain language of the statute makes it unlawful "to interfere with, restrain or deny the exercise of or the attempt to exercise" an FMLA right. 29 U.S.C.A. § 2615(a)(1); see also § 2612(a)(1)(d) (entitling "eligible employees" to take up to 12 workweeks of leave for a "serious health condition that makes the employee unable to perform the functions of the position of such employee"). A necessary condition then is that the employee be initially

eligible to exercise an FMLA right. See § 2611(2)(A) (defining "eligible employee"). It is undisputed that Edwards would have been eligible to take FMLA leave in the fall of 2007 if he were still working at HNB. (See Def.'s Reply Br. at 3 (Document No. 15)). However, Edwards was no longer employed at HNB at the time of the surgery. (See Pl.'s Dep. 110:3–111:17 (stating that Edwards' termination was on or about June 27, 2007)). Consequently, there was no interference because Edwards had no FMLA rights to exercise at that time.

**B. Edwards fails to establish that HNB's interference was "illegitimate"**

Edwards' argument incorrectly conflates termination with illegitimate interference by misstating Third Circuit case law. Edwards reads Sarnowski v. Air Brook Limousine, 510 F.3d 398 (3d Cir. 2007), as placing the burden on the employer to establish that an employee's termination was unrelated to his intention to exercise FMLA rights. (See Pl.'s Opp'n Mem. at 17.) On the contrary, Sarnowski dictates that the "employee must show that he was entitled to [FMLA] benefits . . . and that his employer *illegitimately* prevented him from obtaining those benefits." 510 F.3d at 401 (emphasis added). Edwards seems to have missed a step: as discussed below, he has not established that HNB's actions constituted illegitimate interference, which undermines his reliance on the case.[6]

---

[6] I am also persuaded by Edwards' own recitation of the facts:
> In preparation for [the total knee replacement surgery], [Edwards] had left knee surgery on March 23 and May 11, 2007. . . . After his surgery on Friday[,] March 23, he was out of work for a day or two, then came back, and ended up taking a total of five days. After the May 11 surgery, he was out a total of six days.

I find the reasoning in Serio v. Jojo's Bakery Restaurant, 102 F. Supp. 2d 1044 (S.D. Ind. 2000), persuasive.  At the time in question, Serio was working as a district manager for Jojo's Bakery Restaurant.  Id. at 1045.  His performance evaluation for his first year was just slightly higher than "fair."  Id. at 1046.  There were numerous cost and cleanliness issues at the restaurants Serio oversaw.  Id.  The evaluator conferred with the Human Resources Manager, and over the next several months, Serio received memos from his supervisors regarding his performance.  Id.  After discussions among Serio's supervisors, a decision was made to terminate him.  Id. at 1046–47.  Before Serio was notified though, he began to become stressed (whether it was because he sensed his employment was on the line is unclear), presented himself to the hospital for shortness of breath and chest tightening, and allegedly requested some time off.  Id. at 1047–48.  Serio's supervisors decided to proceed with the termination and scheduled a meeting with Serio; for whatever reason, he did not attend.  Id. at 1048–49.  The supervisor then decided to forgo a meeting and terminated Serio over the phone.  Id. at 1049.

While Serio contended that the termination constituted interference with his FMLA rights, his employer countered that he was terminated for poor performance.  In its analysis, the court recognized that "[a]n employee who requests or takes protected leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled

---

(Pl.'s Opp'n Mem. at 5.)  These facts tend to show that rather than attempting to limit Edwards' FMLA rights, (see id. at 19 ("Defendants must persuade a fact-finder that the termination of an employee who had no actual or oversight relationship to the wrong doing by supervisors who had actual knowledge - *within a month before the decision - of the intent to take leave*, was a legitimate decision." (emphasis added))), HNB was complying with the law and granting the requested leave, up to his termination.

to had he not requested or taken leave." Id. at 1051 (citations omitted); see also 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). The court reasoned that limiting an employer's ability to terminate an employee for performance issues "simply because he requested medical leave would vest Serio with greater rights and benefits than he would have enjoyed had he continued working without requesting such leave." 102 F. Supp. 2d at 1052. Accordingly, the court granted the employer's motion for summary judgment.

Similarly, Edwards should not automatically be granted some greater degree of protection from termination simply because he happened to have requested FMLA leave. Even when viewing all facts and factual inferences in the non-movant's favor, there is no genuine issue that HNB released Edwards for performance issues. HNB has presented numerous documents showing that Edwards was terminated because of the embezzlement issue. (See Spinelli Aff. ¶ 13 (explaining Spinelli's decision to terminate Edwards because he "did not have the requisite cash controls in place that would have prevented or detected the embezzlement . . . ."); Takes Dep. 101:7–102:5 (stating that Edwards' termination was due to "an egregious failure to maintain control")). Edwards himself has admitted that "[HNB] fired him because of the embezzlement." (See Def.'s Statement of Undisputed Facts ¶ 21 ("Plaintiff understood that the Bank fired him because of the embezzlement."); Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 21 (admitting the

same)).  There appears to be little question that HNB's decision was driven by the embezzlement problem at Edwards' branch.[7]

Edwards further argues that he could not be legitimately held responsible for the embezzlement as he had "no actual or oversight relationship" to the incident.  (Pl.'s Opp'n Mem. at 18–19.)  He alleges that HNB's proffered reason for termination is untenable because he had no responsibility over the event or actions leading to it.  This argument rests in large part on his contention that the Assistant Branch Manager (Moyer, then Nee) is responsible for running bank operations, not the Branch Manager.  (Id. at 6–7.)  He also argues that his promotion was merely a change in title, not of duty.  (Id. at 8–9.)  None of these assertions, however, raises any questions as to the legitimacy of HNB's decision.  Additionally, they strike wide of the key issue: Edwards' managerial responsibilities.

HNB has submitted documents establishing that the Branch Manager's responsibilities included overseeing internal control procedures.  Edwards' performance objectives and evaluations for 2005 and 2006 indicate that maintaining audit controls, completing compliance training, and achieving clean audits were part of his

---

[7] The policy implications of adopting Edwards' argument are not easily ignored.  Edwards would convert the FMLA into a kind of strict liability provision where any interference would be *per se* unlawful.  This argument has been directly rejected in Sarnowski.  510 F.3d at 403 ("[T]he FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA"); cf. Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 1980 (8th Cir. 2005) ("[E]very discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights.  However, the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights."); 29 C.F.R. § 825.216(a) (stating that an employee has no greater rights to reinstatement, benefits, or other conditions of employment than "if [he] had been continuously employed during the FMLA leave period").

responsibilities.  (See Pl.'s Dep. Ex. D-14, -16.)  While the actual work itself was to be performed by other individuals, ensuring that proper bank controls were in place and being implemented was ultimately within Edwards' managerial duties.  (See id.; see also Spinelli Aff. ¶¶ 7–8 (stating that maintaining audit controls was part of Edwards' performance goals but that none had been put into place)).[8]  Edwards has not met his burden of coming forward to contest HNB's performance-related (i.e. lack of oversight) reason for his termination.  He was certainly not terminated for his prospective plan to take medical leave.

### IV. Conclusion

For the foregoing reasons, I will grant HNB's Motion for Summary Judgment.  An appropriate Order follows.

---

[8] The extent of the Branch Manager's responsibilities is also confirmed by Edwards' evaluations of Moyer (the preceding Assistant Branch Manager) in 2004 and 2005.  (See Pl.'s Dep. Ex. D-17, -18.)  These documents show that Edwards evaluated Moyer's performance in several areas including audit and control procedures.  (Id.)  In both years, Edwards rated the responsibility to be of the highest relative importance and awarded Moyer the highest rating.  (Id.)  Edwards has not directly refuted this material except to reiterate that he had no involvement with those activities.  These evaluations confirm though that Edwards cannot wholly disclaim any responsibility over these areas.  As the Branch Manager, he was responsible for monitoring his subordinates *and* their work portfolios.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT EDWARDS,** | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-3987 |
| | : | |
| **HARLEYSVILLE NATIONAL BANK,** | : | |
| Defendant | : | |

**O R D E R**

**STENGEL, J.**

**AND NOW**, this 14th day of October, 2008, upon consideration of the defendant's Motion for Summary Judgment (Document #10), and the plaintiff's response thereto, it is hereby ORDERED that the motion is GRANTED.

The Clerk of Court is directed to mark this case closed for statistical purposes.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.